# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| ATLAS IP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> MUELLER SYSTEMS, LLC <br><br> Defendant. | Civil Action No.: _____ <br><br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Atlas IP, LLC ("Atlas") brings this action and makes the following allegations of patent infringement relating to U.S. Patent No. 5,371,734 ("the '731 Patent") against Defendant Mueller Systems, LLC ("Defendant") as follows:

## NATURE OF ACTION

1. This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## THE PARTIES

2. Atlas IP, LLC is a limited liability company organized and existing under the laws of the State of Florida, having a principal place of business at One SE Third Avenue, Suite 200, Miami, Florida 33131.

3. Defendant is a limited liability company organized and existing under the laws of the State of Delaware, having a principal place of business at 10210 Statesville Blvd., Cleveland, North Carolina 27013. Defendant maintains a registered agent in Texas at the following address: C.T. Corporation System, 350 North St. Paul Street, Dallas, TX 75201.

## JURISDICTION AND VENUE

4.      This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a)

5.      Upon information and belief, this Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within the Eastern District of Texas giving rise to this action and has established sufficient minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Personal jurisdiction also exists specifically over Defendant because it, directly or through subsidiaries or intermediaries, makes, uses, offers for sale, sells, imports, advertises, makes available and/or markets one or more products and/or services within the State of Texas, and more particularly, within the Eastern District of Texas, that infringe the patent-in-suit, as described more particularly below.

6.      Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §1391(b) and (c) and §1400(b) insofar as Defendant has, among other things, committed acts of patent infringement in this District.

## BACKGROUND

7.      Atlas is the owner by assignment of U.S. Patent Nos. 5,371,734 ("the '734 patent") entitled, *Medium Access Control Protocol for Wireless Network*, the application for which was filed in January 1993. (Exhibit A)

8.      The invention of the '734 patent is directed, *inter alia*, to "a reliable medium access control (MAC) protocol for wireless, preferably radio frequency (RF), LAN-type network communications among a plurality of resources…." '734 patent, col. 5, lines 10-14.


9. Representative claim 1 of the '734 patent reads:

A communicator for wirelessly transmitting frames to and receiving frames from at least one additional communicator in accordance with a predetermined medium access control protocol, the communicators which transmit and receive the frames constituting a Group, each communicator including a transmitter and a receiver for transmitting and receiving the frames respectively, the medium access control protocol controlling each communicator of the Group to effect predetermined functions comprising:

designating one of the communicators of the Group as a hub and the remaining the communicators of the Group as remotes;

the hub establishing repeating communication cycles, each communication cycle having intervals during which the hub and the remotes transmit and receive frames;

the hub transmitting cycle establishing information to the remotes to establish the communication cycle and a plurality of predeterminable intervals during each communication cycle, the intervals being ones when the hub is allowed to transmit frames to the remotes, when the remotes are allowed to transmit frames to the hub, and when each remote is expected to receive a frame from the hub;

the hub transmitting a frame containing the cycle establishing information which establishes both an outbound portion of the communication cycle when the hub transmits frames to the remotes and an inbound portion of the communication cycle when the remotes transmit frames to the hub, the frame containing the cycle establishing information also establishing the predetermined intervals during the outbound and inbound portions of the communication cycle when each remote is allowed to transmit and receive;

the remotes powering off their transmitters during times other than those intervals when the remote is allowed to transmit frames to the hub, by using the cycle establishing information transmitted from the hub; and

the remotes powering off their receivers during times other than those intervals when the remote is expected to receive a frame from the hub, by using the cycle establishing information transmitted from the hub.

10. Defendant infringes the '734 through, for example, its use of Mi.Hub and Mi.Nodes and other AMI technologies. The term "AMI" generally includes as nodes or meters, water and electric, which record utility usage and allow for communication between the meters and the utility company.

11. Prior to January 2013, Defendant installed among its customer base Mi.Net, a network of Mi.Hubs and Mi.Nodes. Such Mi.Nodes, Mi.Node Electric and Mi.Node Water, Mi.Hydrant, 420 meter, Mi.Node OWL, among others, communicate between each other to reach the Mi.Hub over a wide area network ("WAN") using Mueller's communication protocol.

12. The communication between the smart meters and Master Station over the WAN occurs over the licensed 902-928 MHz band.

13. The meters and Mi.Hub communicate over the WAN ("Accused Products") and are designed to form a communication group. Additional communications can occur via cellular relays, repeaters and between, Mi.Nodes ("HAN").

14. The Accused Products each include a transceiver consisting of a transmitter and receiver that transmits and receives packets of data.

15. The Accused Products operate to transmit and receive information about customer water or electricity usage.

16. The Accused Products form a group of at least one device operating in remote mode (Mi.Node), and one device operating in base mode (Mi.Hub or Mi.Node Electric, for example). For example, in Mi.Net, Mi.Node Water information is collected by Mi.Node Electric or Mi.Hub and is then sent via cellular relay to the Mi.Host servers. The Mi.Node hub can support up to 10,000 water or electric meters.

17. The Mi.Hub transmits at least one frame of data to a Mi.Node that initiates a communication session, and which allows the Mi.Node to calculate the duration of the communication session and its constituent intervals before the Mi.Node transmits to the Mi.Hub during the communication session.

18.  During the communication session, the Mi.Hub and the Mi.Nodes will transmit and receive packets of data to and from one another consisting of an interrogation message from the Mi.Hub to the Mi.Node, and utility usage and machine state data from the Mi.Node to the Mi.Hub.

19.  During the transmission period, the Mi.Node expects to receive a packet of data, which come in the form of a query. During the reception period, the Mi.Node sends packets of data to the Mi.Hub including utility usage and machine state data.

20.  The Mi.Hub establishes communication cycles with the Mi.Node that repeats (*e.g.,* hourly). During each such communication cycle, there are intervals during which the Mi.Hub and the Mi.Node transmit and receive frames. For example, as depicted in Figure 3 of the '734 patent below, the read request and power status check request messages are frames. These frames contain information establishing the communication cycle, including the interval in which a read request or power status check request message is sent from the Mi.Hub to the Mi.Node (i.e., the outbound portion of the communication cycle), and the interval in which a read message or power status message is sent from the Mi.Node to the Mi.Hub (i.e., the inbound portion of the communication cycle).



21. The Mi.Hub determines whether to power off its receiver during times other than those when it is receiving data during a communication session. Likewise, the Mi.Node determines whether to power off its transmitter during times other than those when it is transmitting data during a communication session. For example, the Mi.Node can communicate with the access point using half-duplex radio frequency communications. In half-duplex communications, the Mi.Node powers down the receiver circuitry of the radio transceiver during the interval of the communication cycle in which it is transmitting the read and power status check request messages. Once the Mi.Node has transmitted data packets to the Mi.Hub, if its receiver has been powered down, it activates its receiver to await the reception of data from the base. Alternatively, the Mi.Node designates itself as a hub and initiates a communication cycle with another Mi.Node.

22. A chart showing that the Accused Products literally satisfy each limitation of claim 1 of the '734 patent is attached hereto as Exhibit B.

### Count I – Infringement of the '734 Patent

23. Atlas hereby incorporates by reference paragraphs 1-22.

24. Defendant's Mi.Nodes and Mi.Hubs and repeaters described herein directly infringed the '734 patent before the expiration thereof, including but not limited to representative claim 1 (above) and claims 12, 13, 15, 16, 17, 18, 22, 23, 24, 25, 29, 31, 32, 33 and 46.

25. Defendant is liable for infringement of one or more claims of the '734 patent pursuant to 35 U.S.C. § 271, either literally or under the Doctrine of Equivalents.

26. As a result of Defendant's wrongful conduct, Atlas has been damaged in an amount to be determined at trial, but in no case less than a reasonable royalty.

27. Atlas has not made or sold, or had made or sold for it, any product covered by the claims of the '734. Of Atlas's predecessors in interest in the ownership of the '734 patent, only Digital Ocean Inc. made or sold, or had made or sold, products covered by the claims of the '734 patent. Digital Ocean marked all such products with the '734 patent number.

## REQUEST FOR JURY TRIAL

28. Atlas requests a jury trial on all issues for which a jury trial is permissible.

## PRAYER

WHEREFORE, Atlas respectfully requests that this Court enter the following prayer for relief:

A. A judgment in favor of Plaintiff Atlas IP, that Defendant has infringed, either literally and/or under the doctrine of equivalents, the '734 patent;

B. An award of damages resulting from Defendant's acts of infringement in accordance with 35 U.S.C. § 284;

C. A judgment and order requiring Defendant to provide accountings and to pay supplemental damages to Atlas including, without limitation, prejudgment and post-judgment interest; and

D. Any and all other relief to which Atlas may show itself to be entitled.

Dated: October 6, 2016.                    Respectfully submitted,

                                                                 */s/ Deron R. Dacus*_____
Deron R. Dacus
Texas Bar No. 00790553
ddacus@dacusfirm.com
Shannon Dacus
Texas Bar No. 00791004
sdacus@dacusfirm.com
Peter A. Kerr
Texas Bar No. 24076478
pkerr@dacusfirm.com
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX  75701
(903) 705-1117 Telephone
(903) 581-2543 Facsimile

*Attorneys for Plaintiff Atlas IP, LLC*